Good morning, Your Honors. May it please the Court. My name is Keith Hilzendegger. I'm with the Office of the Federal Public Defender in Phoenix, and I represent the defendant in this case, Shonnie George. The Court should vacate the convictions in this case and remand for a new trial because the record doesn't show that the trial judge considered even the one alternative to closing the courtroom that the parties proposed. And the Supreme Court held in Presley v. Georgia that a trial judge is required to consider alternatives even if the parties don't propose them. And I think there's one place in the record that shows that the trial judge didn't follow through with his plan to consider the alternative. The alternative that was proposed was, instead of making a pretrial decision to close the courtroom, the alternative was not to close the courtroom pretrial and only make that decision if the children, once they had gotten on the stand, demonstrated any difficulty in testifying. What Judge Snow said that he was going to do at the end of the first day of the pretrial conference was watch some videotaped interviews of the children, and then, if he was satisfied based solely on those interviews, that though the children wouldn't have any difficulty testifying, he was going to defer the closure decision until the, you know, when the children were on the stand during the trial. And he also said that if he needed more information, you know, the videos weren't in his mind adequate to allow him to decide whether to make a pretrial decision to close the courtroom, what he planned to do was, sometime before the children testified, have a session where the children would get up on the stand and he would ask the questions. Well, the government said they didn't want to do that. And so the district court said, I'll assume the government has retracted that motion. But then the district court went on. Right. And subsequently, he reviewed the videotapes and was able to make a decision based on those videotapes. So what was wrong with that? Well, I disagree, Your Honor, that he was able, he said on the record that he was able to make a decision. Because at the beginning of, on the second day of the pretrial conference, at the beginning of the discussion about the courtroom closure proposal, Judge Snow said, well, I'm going to find on the record that the children are articulate and advanced in their age. And I'm also going to find that the interviews that I just watched demonstrate a lot of anger and tension between the family members, which is understandable in a case like this. And then the judge says, so I'm inclined to close the courtroom, but I also don't want to discount the interests of the defendant, which seem to be legitimate to me. And the only interest the defendant raised was prejudice. I mean, he says, that's your only concern, right, prejudice to the defendant? And the defendant says, yes, that's the only concern. So the district court did consider that and then structured this, we'll pretend not to close it, we'll do it at a recess, we'll just do it for these victims, and the defendant never says another word, so we assume that the defendant was satisfied with it, at least didn't object to it. Why wasn't that sufficient alternative? He considered various ways of assessing whether the victims were able to testify without closing the courtroom. He decided that the courtroom should be closed, but then he proposed a procedure that took into account the defendant's concerns about prejudice and then went forward with that. What was wrong with that? That seems like considering different alternatives. I just didn't read the record in this case, Your Honor, as expressly indicating that he considered this alternative of deferring the decision to close the courtroom until trial, because he said these things that point in opposite directions once he had viewed the videos and resumed the pretrial conference. What, in your view, do we consider as we review? Are we considering whether the judge abused discretion, or is it your position that the courtroom should never be closed, regardless of the defendant? I don't – I'm not taking the position that courtroom closure is forbidden. And I disagree that the standard of review here is abuse of discretion. I disagree with that. No, I didn't say that. You misunderstood me. I'm sorry. I said, do we decide? What do we consider? And that's what I want you to tell us. The Court should look at the record and see if there's enough evidence that he considered alternatives and that he may express factual findings about the scope of and the reasons for the closure. Well, we know from this record that he didn't close the courtroom except for certain witnesses. So doesn't that suggest that there was some consideration? Well, the only concern about closing the courtroom was to create an atmosphere in which — Yes, but as I read your brief, you see, I would assume the courtroom was closed. But when you look at what really happened, that was the testimony of one witness. Isn't that right? I didn't read the record that way, Your Honor. I don't think the record is entirely clear about when the courtroom was closed and opened because the only definitive statement in the record as — It may not be clear, but it certainly suggested that we'll do it just before recess. So doesn't that kind of suggest that it's only one witness? I — not the one witness, Your Honor. You mean all four children. All right. Right. Because that was the — that was the way the closure was described at the end of the pretrial conference. Tell us what the test is. What do we decide when we say you are wrong, the courtroom should be open, and you say it's not abuse of discretion. So what is the measure? Well, the Court looks at the totality of the record to see that whether there are findings about the scope of the closure and the reasons for it and whether the district judge considered alternatives. And the record, the Supreme Court has said, has to be clear enough to allow this Court to make that determination. And if the record is not clear, the Court can send it back. The Court doesn't have to — and maybe this is what Your Honor is getting at. The Court doesn't have to substitute its judgment for the district court. If we had been presiding, this Court doesn't need to say, if we had been presiding, we would have held this as an open trial. All this Court needs to do is say, gee, the record just isn't clear enough. There's evidence pointing to one reason, evidence pointing to another. And for that reason, this Court should just hold a new trial. And if I may, Your Honor, I'd like to reserve the balance of my time for remarks. We'll hear from the government. Good morning. My name is Cassie Wu, and I represent the United States in this matter. The district court did not err in closing the courtroom during the child victim's testimony. Although the Sixth Amendment guarantees a right to a public trial, that right is not absolute, and one exception to that right is found in 18 U.S.C. 3509E, which permits the closure of the courtroom during child victim's testimony. In this case, the Court had in front of it a certain amount of evidence, particularly it reviewed the forensic interviews of the children prior to making its determination. And those forensic interviews provided the Court with sufficient information to determine whether or not to close the courtroom. First of all, it detailed the nature of the defendant's conduct in this case, which was the sexual abuse of four small children. It also detailed the ages of the children and their ability to testify in an open courtroom. The children at the time of their testimony would have been ---- Well, you don't want to misstate it or overstate it. It was an estimation of the children's ability to testify. It wasn't a finding. He looked at the facts and he decided for reasons he, I think, recited in the record, I'll close the courtroom for this phase of the testimony. That's correct, Your Honor. It was just a partial closure of the courtroom. The courtroom was only closed during the child victim's testimony, and the government proposed allowing each side to have several individuals remain in the courtroom. So it wasn't even that all audience was excluded during that partial closure of the courtroom. The district court focused on effective communication, whether the victims could effectively communicate, rather than whether there would be psychological damage. Is effective communication an overriding interest, as the Supreme Court has said, that the court would have to identify? Because I didn't see any case that indicated that effective communication constituted an overriding interest. Your Honor, the effective communication language comes from Section 3509. I understand that, but the defendant opposing counsel isn't arguing that there's a 3509 violation. And so far as I know, we're bound by the constitutional rulings, not by the statute. Yes, Your Honor. Because this was only a partial closure of the courtroom, the case law supports that there did not need to be an overriding interest. There only had to be a ---- What is this? This was part of your brief. I didn't understand. This wasn't a partial closure, right? The public was not allowed in, and just a few people were allowed in. Now, that sounds like a total closure to me, where the public is excluded, as opposed to the partial closure cases where the public is included, but some people who are giving the evil eye to the witness are excluded. That's what a partial closure is. So I don't see how this could be deemed to be a partial closure under the case law. Your Honor, the government's argument is that it is a partial closure because it was open during, the courtroom was open during all of the other witnesses' testimony, that it was only closed for four witnesses, those being the child victims. So there was a total closure as to the four witnesses, but otherwise it was open, and you're calling that a partial closure? Is there cases supporting that? Well, first of all, I'm not saying there was a total closure for when the child victims testified either, Your Honor, because each side was allowed to designate several individuals to remain in the courtroom. But the public was excluded, correct? Yes, Your Honor. Should there have been any members of the public who wanted to watch those four child victims testify, they would have been excluded. So is there a case where the court, the Supreme Court, or we have deemed a closure, a total closure for certain witnesses, but leaving the courtroom open for the rest of the trial to be a partial closure as opposed to a total closure? Your Honor, I would, I don't know, I don't believe there's a U.S. Supreme Court case on that. However, what I would point this Court to is the Ninth Circuit decision in U.S. v. Sherlock. There they excluded individuals, right, not the public? They excluded, there were certain, they excluded certain individuals who were allowed to, they designated different categories of individuals who could remain, including the press members of the bar, I believe, and I think maybe some family members of the defendant, but they did exclude members of the public. At least that is my recollection of U.S. v. Sherlock. And in U.S. v. Sherlock, this Court set forth that there only needed to be a substantial reason to close the courtroom during the child, the children's testimony, not an overriding interest. So if we determine this is a total closure, does that mean you lose because there wasn't an overriding interest for effective communication? No, Your Honor. The government would assert that this was also an overriding interest. These were children who had suffered sexual abuse at the hands of a relative, very horrific sexual abuse that they were going to have to testify about. And the ages of the children at the time of their testimony were ages 5, 7, and 11 and 12. And to obtain their testimony is an overriding interest. Otherwise, without their testimony, this case would not be able to be prosecuted, Your Honor. And to address the issue about whether or not reasonable alternatives were considered, the Court did consider reasonable alternatives and in fact enacted a reasonable alternative by allowing the courtroom only to be closed during the child victim's testimony and allowing certain individuals to stay in the courtroom for that testimony and not excluding everyone from the courtroom. And the defense was able to designate the individuals that they wished to be allowed to stay in the courtroom. That was not designated for them. Should the district court have sua sponte considered videotape depositions or I guess the short two-way closed circuit television as other alternatives? No, Your Honor. Now, I would just like to point out that those options were mentioned and presented to the court in the government's briefing. It was in the reply brief. So the court was well aware of those alternatives, as was the defense. And at no time did the government, the defense, or the court suggest that it would be preferable to have these children testifying via closed circuit television or through video deposition. And presumably that is a question that the defense would want to, a decision that they would want to be heard on before you're actually suggesting having the victims removed from the courtroom entirely for their testimony. Based on the fact, the court also did consider the alternative that was set forth by the defense, which was to simply reserve judgment on whether or not these children could effectively communicate prior to their testifying and then, if they were struggling, make the decision whether or not the courtroom should be closed. The court had that alternative in its mind and presented to it at the time that it watched the forensic interviews and ultimately decided that in order for these young children to effectively communicate, the courtroom should be closed only during their testimony. If there is no further questions, I would simply ask that this Court affirm all four of the defendant's convictions for aggravated sexual abuse of a minor. Thank you. If I may, Your Honor, I'd like to pick up on your questions to my colleague about whether there was a partial or a total closure of the courtroom. And first, read from Sherlock, 962 F. 2nd at 1358. It appears that the scope of the exclusion in Sherlock was limited to the defendant's family and not to the general public, and that suggests to me that that was a partial closure in Sherlock. Here, there appears to have been a total closure of the courtroom during the children's testimony because the general public was excluded and at least some members of Mr. George's family were excluded. My colleague alludes to the fact that a number, a limited number, a select few family members were allowed to remain.  I'm sure you can argue the difference between partial and total, but if you assume partial means not excluding everybody and total means excluding everybody. I'm not aware of a case that draws that distinction, Your Honor. But I also want to point out that the record isn't clear about which family members were allowed to remain in the courtroom. That was not part of the discussion at the pretrial conference. The record is clear that there's no objection that certain members were not allowed. The record is clear that defense counsel agreed at the end of the discussion at the second day of the pretrial conference to the proposal as outlined by the trial judge, yes. If there are no further questions, I'll thank the Court. Thank you. So this case is submitted, and the Court will take a brief five-minute recess.
judges: Farris, Fernandez, Ikuta